[No. B052638. Second Dist., Div. Four. July 11, 1994.]

APSB BANCORP et al., Plaintiffs and Respondents, v.
THORNTON GRANT et al., Defendants and Appellants.

928

COUNSEL

Tuttle & Taylor, Kate Schneider and Mark A. Borenstein for Defendants and Appellants.

Cummins & White, Robert W. Bollar, Robert D. Sheehan and Kent M. Bridwell for Plaintiffs and Respondents.

OPINION

HASTINGS, J.—In this appeal, we affirm the judgment of the trial court and hold that appellant is not eligible for indemnification pursuant to Corporations Code section 317, subdivision (d).[1] In so holding, we determine that section 317 allows indemnification for corporate "agents" sued for carrying out activities on behalf of a corporation within the common law meaning of agency, but not where the acts giving rise to the underlying suit arose out of retention of an independent contractor performing business for its own benefit, even though the activities may directly benefit the corporation.

FACTS

For the years 1980 to 1983, appellant Alexander Grant and Company (now Thornton Grant), a certified public accounting firm, was retained by respondent, American Pacific State Bank, to carry out independent annual audits for the bank. Pursuant to the engagement letters between the two parties, appellant was to examine the statement of financial condition, statement of earnings, stockholder's equity and changes in financial status

---

[1]All references are to the Corporations Code unless otherwise noted.

and issue a report for the year so engaged. Appellant performed the day-to-day aspects of the audits independent from respondent and in accordance with generally accepted auditing standards.

During this same period of time, Fereidoon Vassegh was employed by respondent as a senior vice-president and managed to embezzle approximately $2.5 million in a scheme involving false loans and savings transactions. As a result of this loss, respondent filed suit against Vassegh to recover the embezzled fund and against appellant alleging breach of contract, negligence and gross negligence in connection with the audits. After a jury trial, appellant was exonerated of any fault and judgment was entered in its favor on all counts.

As a result of the four-and-one-half-year litigation, appellant claimed to have incurred attorney fees and legal expenses of $651,649.95 and moved the trial court to recover these fees and costs pursuant to section 317, subdivisions (d) and (e)(2). Appellant contended that it was an agent pursuant to section 317, subdivision (a), successfully defended the underlying matter and therefore should recover pursuant to the mandatory provisions of subdivision (d). Respondent opposed the motion arguing that appellant was not acting as an agent within the meaning of subdivision (a) and therefore did not qualify for indemnification. The trial court denied the motion holding that with "the independence they must have," an "independent auditor" such as appellant is not within the meaning of subdivision (a). The court also invited an appeal as there was no case law cited on section 317, subdivision (a) upon which it could depend for guidance.

## DISCUSSION

Section 317, subdivision (c), provides: "A corporation shall have the power to indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending, or completed action *by or in the right of the corporation* to procure a judgment in its favor by reason of the fact that the person is or was an agent of the corporation. . . ." (Italics added.) Subdivision (d) provides: "To the extent that an agent of a corporation has been successful on the merits in defense of any proceeding referred to in subdivision (b) or (c) or in defense of any claim, issue, or matter therein, the agent shall be indemnified against expenses actually and reasonably incurred by the agent in connection therewith."

We first turn to the question of whether or not appellant may be considered an "agent" as defined in section 317. Agent is defined in subdivision (a) as "any person who is or was a director, officer, employee or other

agent of the corporation. . . ." Here, our focus is on the phrase "other agent of the corporation" and whether this term encompasses the appellant's status. Respondent asserts that under the statutory construction rule of *ejusdem generis*, the general term "other agent of the corporation" necessarily refers to the same class of persons as "director, officer [and] employee." However, restricting the phrase, as suggested to refer only to corporate directors, officers and employees, would render the phrase surplusage and void of any significant contribution to the section. Words are to be construed in the context in which they appear; therefore, interpretations which reduce some words to mere surplusage or deprive them of any significance should be avoided. (*California Mfrs. Assn.* v. *Public Utilities Com.* (1979) 24 Cal.3d 836, 844 [157 Cal.Rptr. 676, 598 P.2d 836]; *Southern Cal. White Trucks* v. *Teresinski* (1987) 190 Cal.App.3d 1393, 1404 [236 Cal.Rptr. 159].)

Legal commentators have expressed the view that subdivision (a) is broader than directors, officers and employees: "A less obvious 'agent' may be a non-employee such as an outside lawyer. . . . It is not within the scope of this article to consider the reach of the law of agency, but it would seem that at least under some circumstances a lawyer would be treated as an 'agent' under established agency rules." (Heyler, *Indemnification of Corporate Agents* (1976) 23 UCLA L.Rev. 1255, 1256.) Another author has stated that subdivision (a) applies to "any employee or agent . . . of the corporation itself. This is intended to encompass all persons serving the corporation, whether as common law servants or as independent contractors. . . ." (1 Marsh & Finkle, Marsh's Cal. Corporation Law (3d ed.) § 10.38, p. 739.)

Appellant concedes that it is an independent contractor. However, as independent contractor and agent are not mutually exclusive legal categories, our inquiry does not end here. (*City of Los Angeles* v. *Meyer Bros. Parking System, Inc.* (1975) 54 Cal.App.3d 135, 138 [126 Cal.Rptr. 545].) In *Meyer Bros.* it was held an independent contractor is also an agent when it contracts to act on behalf of a "principal" and is subject to the "principal's" control except with respect to the "agent's" physical conduct. (*Id.* at p. 138.)

Therefore, we hold that, under appropriate circumstances, an independent accounting firm may fall within the term "agent" for purpose of indemnification pursuant to section 317.

█ We next turn to the meaning of the term "agent" as used in section 317.

"In construing a statute we begin with the fundamental rule that a court should ascertain the intent of the Legislature so as to effectuate the purpose

of the law. [Citations.] An equally basic rule of statutory construction is, however, that courts are bound to give effect to statutes according to the usual, ordinary import of the language employed in framing them. [Citations.] Although a court may properly rely on extrinsic aids, it should first turn to the words of the statute to determine the intent of the Legislature. [Citations.] If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history. [Citations.]" (*California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856], internal quotation marks omitted.)

Section 317 uses the simple term "agent" which the Legislature has defined in Civil Code section 2295 as follows: "An agent is one who represents another, called the principal, in dealings with third persons. Such representation is called agency." We believe that this is the meaning contemplated within section 317. Such an interpretation is consistent with the stated policy behind section 317 and similar statutes, which is "to provide sufficient flexibility to afford reasonable protection for directors and officers while imposing safeguards which adequately protect the shareholders" (Legis. Com. com., 23E West's Ann. Corp. Code (1990 ed.) § 317, pp. 209-210) and "to encourage capable individuals to serve" the corporation (13 Fletcher Cyclopedia Corporations (rev. 1991, perm. ed.) § 6045.2, p. 524.) Such protection should also be afforded to agents who are performing duties on behalf of the corporation in the traditional sense.

This interpretation is also suggested in *Plate* v. *Sun-Diamond Growers* (1990) 225 Cal.App.3d 1115 [275 Cal.Rptr. 667], dealing specifically with indemnity pursuant to section 317. In *Plate*, two employees of Sun-Diamond Growers, Branson and McElroy, decided to leave their employment, set up their own marketing organization and market the products of their prior employer. They did so, ousting the prior exclusive marketing entity, H.R. Plate & Company, Inc. (Plate). A suit followed, with Plate naming Branson and McElroy as defendants as well as Sun-Diamond Growers and other remaining employees of Sun-Diamond. After trial, a judgment was rendered against Branson and McElroy and in favor of Plate. Sun-Diamond and their remaining employees were exonerated. Branson and McElroy sought indemnity pursuant to section 317 and the trial court granted it. Sun-Diamond appealed and the appellate court reversed the order with a finding that Branson and McElroy were not acting on behalf of Sun-Diamond but for themselves in the actions they took and therefore did not fall within the terms of indemnification.

In the course of the opinion, the application of section 317 was discussed: "The first prerequisite to indemnification under section 317, subdivision (b),

is that the action against the person is brought 'by reason of the fact that the person is or was an agent of the corporation.' Marsh, in his treatise on California corporation law, explains: 'In other words, the conduct of the agent which gives rise to the claim against him must have been performed in connection with his corporate functions and not with respect to purely personal matters.' [Citation.] Where personal motives, not the corporate good, are predominant in a transaction giving rise to an action, indemnification is not warranted. For example, '[i]t would . . . appear unlikely that an officer could properly claim that he was entitled to indemnification as the result of litigation brought to recover short-swing profits or profits from trading in the stock of his corporation on the basis of inside information. . . .' [Citation.]" (*Plate* v. *Sun-Diamond Growers, supra,* 225 Cal.App.3d at p. 1123.) "We conclude the trial court's implicit finding that Branson and McElroy were sued by reason of the fact they were agents of Sun-Diamond, and express finding that they acted in good faith, are not supported by substantial evidence. [¶] The record establishes these defendants were sued because of activity undertaken to establish their own business entirely independent of Sun-Diamond, for their own personal benefit, and not in furtherance of Sun-Diamond's policies or objectives. Such activity was unrelated to the performance of their corporate duties and responsibilities at Sun-Diamond." (*Id.* at p. 1126.)

■ We next turn to the facts of this case and determine whether appellant was acting as an "agent" as contemplated within section 317. In that regard, "The question of whether a corporate agent is sued by reason of his or her official corporate position, and whether he or she acted in good faith and for the best interests of the corporation, appears to be an essentially factual question for the trial court. The trial court's factual findings, express or implied, must be upheld if supported by substantial evidence. [Citation.] In reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the trial court's findings. [Citation.]" (*Plate* v. *Sun-Diamond Growers, supra,* 225 Cal.App.3d at p. 1125.)

■ Furthermore, whether an agency relationship has been created or exists is determined by the relation of the parties as they in fact exist by agreement or acts (*Pagan* v. *Spencer* (1951) 104 Cal.App.2d 588, 592-593 [232 P.2d 323]), and the primary right of control is particularly persuasive. (*Malloy* v. *Fong* (1951) 37 Cal.2d 356, 370 [232 P.2d 241]; *Cox* v. *Kaufman* (1946) 77 Cal.App.2d 449, 452 [175 P.2d 260].) Other factors may be considered to determine if an independent contractor is acting as an agent, including: whether the "principal" and "agent" are engaged in distinct occupations; the skill required to perform the "agent's" work; whether the "principal" or "agent" supplies the workplace and tools; the length of time

for completion; whether the work is part of the "principal's" regular business; and whether the parties intended to create an agent/principal relationship. (*Malloy* v. *Fong, supra,* 37 Cal.2d at pp. 370-372.)

In *Bily* v. *Arthur Young & Co.* (1992) 3 Cal.4th 370 [11 Cal.Rptr.2d 51, 834 P.2d 745], our Supreme Court undertook an extensive review of the role of independent auditors for purposes of liability to third parties. While not directly on point with the issue of this case, the opinion notes that the ultimate product of the audit may serve two important purposes: " 'In the first instance, this unqualified opinion serves as an assurance to the client that its own perception of its financial health is valid and that its accounting systems are reliable. The audit, however, frequently plays a second major role: it assists the client in convincing third parties that it is safe to extend credit or invest in the client.' [Citation.]" (*Id.* at pp. 382-383.) There is no doubt but that appellant in this case was sued by respondent for negligence in connection with the first role identified in *Bily, supra,* and not for representing the corporation in dealings with third persons. However, a further review of the evidence is important.

The engagement letters sent between appellant and respondent do not state whether the parties intended appellant to act on behalf of respondent in any manner other than auditing the financial statements. Control for agency purposes is exhibited by the "principal" having the power to discharge the "agent" (*Malloy* v. *Fong, supra,* 37 Cal.2d at p. 370) or control over the details of the work. (2 Witkin, Summary of Cal. Law (9th ed. 1987) Agency and Employment, § 15, pp. 31-32.) Here, appellant was employed on an annual contract basis, conducted surprise visits to the bank branches without authority so as to walk in on the natural state of the branch, and maintained an independent relationship with respondent as required by generally accepted auditing standards. Under these facts, it is apparent that respondent exercised very little control over appellant despite the fact that the accounting firm used respondent's employees and statements prepared by respondent during their audit. Respondent engaged appellant to audit its annual financial statements and that was the extent of its control over the accounting firm. Turning to the several factors expressed in *Malloy,* it becomes even more evident that appellant was not respondent's agent. While the provision of workplace, employees, financial records and computers by the respondent tends to show an agency, the stronger case for a nonagency relationship is shown because the two parties are engaged in separate occupations, the work performed by appellant is not part of respondent's regular business, the contractual nature of the engagements and the parties did not expressly create an agency relationship as evidenced by the engagement letters.

Here, appellant is a certified public accounting company holding itself out as such to be hired by members of the public for a fee. Appellant's business is to conduct, among other things, independent audits for corporations. Appellant conducts this business for personal gain, although the client corporations also receive benefit by being able to reference the report generated by the accountants. In this case, appellant was sued to recover losses directly resulting from the failure of appellants to recognize and warn the corporation of the defalcations of Vassegh. Appellant was not being sued by third persons for losses occasioned by appellant's representation of the corporation or for taking action on behalf of the corporation in the classical sense of agency.

For the foregoing reasons, we hold that appellant is not an agent of respondent and is not entitled to mandatory indemnification pursuant to section 317, subdivision (d).

### Disposition

The judgment is affirmed. Each party to bear its own costs.

Woods (A. M.), P. J., and Vogel (C. S.), J., concurred.

Appellants' petition for review by the Supreme Court was denied September 29, 1994.