[No. C029576. Third Dist. Mar. 9, 2000.]

CHANNEL LUMBER COMPANY, INC., Plaintiff and Appellant, v. PORTER SIMON et al., Defendants and Respondents.

**Counsel**

Weintraub, Genshlea & Sproul, Charles L. Post, William S. Jue; and Stephen H. Cornet for Plaintiff and Appellant.

Hansen, Boyd, Culhane & Watson, Kevin R. Culhane, Betsy S. Kimball, Roger R. Billings and Daniel V. Kohls for Defendants and Respondents.

**Opinion**

SCOTLAND, P. J.—After retained counsel unsuccessfully defended a corporate landlord in a legal action brought against it by tenants, the corporation sued counsel for malpractice. Judgment was entered in counsel's favor.

Relying on Corporations Code section 317, the trial court ordered the corporation to indemnify counsel for the expenses and attorney fees incurred in defending against the malpractice claim. (Further section references are to the Corporations Code unless specified otherwise.)

Section 317 gives a corporation the authority, and in some instances imposes an obligation upon the corporation, to indemnify a person "who was

or is a party or is threatened to be made a party" to any legal proceeding "by reason of the fact that the person is or was an agent of the corporation . . . ."

For reasons which follow, we agree with appellant corporation that section 317 does not apply to this case. As we will explain, when outside counsel (as opposed to in-house counsel) is retained by a corporation to represent it at trial and then is sued by the corporation for allegedly committing legal malpractice while representing the corporation, outside counsel is a party to the malpractice suit by reason of his or her actions in the capacity of an independent contractor, not "by reason of the fact that [outside counsel] is or was an agent of the corporation," within the meaning and purposes of section 317.

Because we conclude section 317 does not apply, we shall reverse the trial court's order requiring, pursuant to that section, the corporation to indemnify its former outside counsel for attorney fees and expenses incurred in defending against the corporation's action for legal malpractice.

## FACTUAL AND PROCEDURAL BACKGROUND

Channel Lumber Company, Inc. (Channel) was the owner of the Boatworks Mall in Tahoe City. (See *Pate v. Channel Lumber Co.* (1997) 51 Cal.App.4th 1447, 1449-1450 [59 Cal.Rptr.2d 919].) In accordance with lease agreements, the expenses of maintaining the common areas of the mall were passed on to tenants in proportion to the square footage of each individual tenant's leased premises. (*Id.* at p. 1450.) A number of tenants brought an action against Channel (the Pate litigation), alleging it had inflated each plaintiff's percentage share of the common expenses and had charged the tenants for alleged common expenses that were redundant, unnecessary, or fraudulent. (*Ibid.*)

Channel retained Porter Simon, a law corporation, and Attorney Michael Garnett (collectively Porter Simon) to defend Channel in the Pate litigation. During trial, Channel attempted to introduce documentation to establish the validity of the common expenses it had collected from tenants. The tenants objected on the ground that some of the documentation had not been provided during discovery. (*Pate v. Channel Lumber Co., supra,* 51 Cal.App.4th at p. 1452.) The trial court excluded the documentation from evidence as a discovery sanction, and the jury returned a verdict in favor of the tenants. (*Id.* at p. 1453.) This court upheld imposition of the discovery sanction and affirmed the judgment against Channel. (*Id.* at p. 1456.)

Channel then commenced the present action against Porter Simon, alleging professional negligence. Channel asserted that, among other shortcomings, Porter Simon had failed to assure a record of compliance with discovery requests, failed to undertake proper discovery, and failed to assert the res judicata effect of prior litigation. The trial court granted summary judgment in favor of Porter Simon.

Relying on section 317, subdivision (d), the trial court then awarded to Porter Simon attorney fees and expenses in the amount of $83,860. Channel appeals, asserting that section 317 does not apply to Porter Simon.

## DISCUSSION

Section 317 gives a corporation the authority, and in some instances imposes an obligation upon the corporation, to indemnify a person "who was or is a party or is threatened to be made a party" to any legal proceeding "by reason of the fact that the person is or was an agent of the corporation[.]" The issues in this appeal are focused upon subdivisions (c) and (d) of this section.

Subdivision (c) of section 317 states in pertinent part: "A corporation shall have power to indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending, or completed action by or in the right of the corporation to procure a judgment in its favor by reason of the fact that the person is or was an agent of the corporation, against expenses actually and reasonably incurred by that person in connection with the defense or settlement of the action if the person acted in good faith, in a manner the person believed to be in the best interests of the corporation and its shareholders."

Subdivision (d) of section 317 provides: "To the extent that an agent of a corporation has been successful on the merits in defense of any proceeding referred to in subdivision (b) or (c) or in defense of any claim, issue, or matter therein, the agent shall be indemnified against expenses actually and reasonably incurred by the agent in connection therewith."

Thus, subdivision (c) of section 317 establishes corporate authority to indemnify an agent who is made or threatened to be made a party to an action by or in the right of the corporation, while subdivision (d) makes indemnification obligatory when the agent successfully defends such a proceeding on the merits.

Read together, these subdivisions limit the right to seek reimbursement to a person who (1) is an agent of the corporation, and (2) is made or threatened

to be made a party to an action or proceeding "by reason of the fact that the person is or was an agent of the corporation . . . ."

Porter Simon is an outside law firm that was retained by Channel to defend it in litigation brought by its tenants. Channel's action against Porter Simon was based solely upon alleged negligence in the performance of those legal services. Porter Simon asserted and the trial court agreed that, in this respect, Porter Simon was an agent of Channel entitled to indemnification in accordance with section 317, subdivision (d).

On appeal, Channel contends the trial court erred in concluding that Porter Simon was an agent of Channel within the meaning and purposes of section 317. We agree.

"For the purposes of [section 317], 'agent' means any person who is or was a director, officer, employee or other agent of the corporation. . . ." (§ 317, subd. (a).) Because Porter Simon was not a director, officer, or employee of Channel, the question posed is whether Porter Simon may be considered an "other agent of the corporation" for purposes of the statute.

In this respect, section 317 provides no express definitional help; however, the reasonable conclusion is that general principles of agency law may be used in resolving questions under section 317. (*APSB Bancorp v. Thornton Grant* (1994) 26 Cal.App.4th 926, 931 [31 Cal.Rptr.2d 736].)

As we shall explain, relevant law suggests that outside counsel retained by a corporation to represent it at trial has attributes of both an independent contractor and agent of the corporate client.

"An agent is one who represents another, called the principal, in dealings with third persons. Such representation is called agency." (Civ. Code, § 2295.) The essence of an agency relationship is the delegation of authority from the principal to the agent which permits the agent to act "not only *for*, but *in the place of*, his principal" in dealings with third parties. (*People v. Treadwell* (1886) 69 Cal. 226, 236 [10 P. 502], italics in original.) "The heart of agency is expressed in the ancient maxim: '*Qui facit per alium facit per se.*' [He who acts through another acts by or for himself.]" (*Wallace v. Sinclair* (1952) 114 Cal.App.2d 220, 229 [250 P.2d 154]; see 3 Am.Jur.2d (1986) Agency, § 2, p. 510.)

Thus, it has been said "that the distinguishing features of an agency are representative character and derivative authority." (*Lovetro v. Steers* (1965) 234 Cal.App.2d 461, 474 [44 Cal.Rptr. 604]; *Gipson v. Davis Realty Co.*

(1963) 215 Cal.App.2d 190, 206 [30 Cal.Rptr. 253]; *Store of Happiness v. Carmona & Allen* (1957) 152 Cal.App.2d 266, 269 [312 P.2d 1104].)

In general, "[a]ny person having capacity to contract may appoint an agent, and any person may be an agent." (Civ. Code, § 2296.) However, there are limitations upon the establishment of an agency relationship. "An agent may be authorized to do any acts which his principal might do, except those to which the latter is bound to give his personal attention." (Civ. Code, § 2304.) In other words, a principal may not assign nondelegable duties to an agent and may not employ an agent to do that which the principal cannot do personally. Accordingly, if a principal wishes to accomplish an end that it cannot personally accomplish, it must do so, if at all, through a mechanism other than an agency relationship.

■ It is well established that a corporation cannot represent itself in court. (*Merco Constr. Engineers, Inc.* v. *Municipal Court* (1978) 21 Cal.3d 724, 729-730 [147 Cal.Rptr. 631, 581 P.2d 636].) A trial attorney performs services in a court of justice (*id.* at p. 730), "and the court is entitled to expect to be aided in resolution of the issues by presentation of the cause through qualified professionals rather than a lay person." (*Id.* at p. 732.) Moreover, a licensed attorney is subject to professional rules of conduct and is required to adhere to ethical standards which would not apply to a lay-person. (*Ibid.*)

Therefore, the relationship of an outside trial attorney and a corporate client does not readily satisfy all of the usual criteria of agency. When a corporation retains a trial attorney to defend it in litigation, it hires the attorney to perform services in a court of justice (*Merco Constr. Engineers, Inc.* v. *Municipal Court, supra,* 21 Cal.3d at p. 730), rather than to act for, and in its place, in dealings with third persons (cf. Civ. Code, § 2295). A corporation is not free to appoint any person to represent it in court; it may hire only a licensed attorney. (Cf. Civ. Code, § 2296.) A corporation does not hire an attorney by authorizing him or her to do acts which the corporation might do, since the corporation is legally prohibited from doing what it hires the attorney to do. (Cf. Civ. Code, § 2304.)

■ Moreover, in considering the meaning of "agent" in section 317, the court in *APSB Bancorp v. Thornton Grant, supra,* 26 Cal.App.4th 926 noted that "the primary right of control is particularly persuasive" and that other factors include "whether the 'principal' and 'agent' are engaged in distinct occupations; the skill required to perform the 'agent's' work; whether the 'principal' or 'agent' supplies the workplace and tools; the length of time for completion; whether the work is part of the 'principal's' regular business;

and whether the parties intended to create an agent/principal relationship." (26 Cal.App.4th at pp. 932-933.)

These factors demonstrate that an outside trial attorney is an independent contractor of his or her corporate client.

Generally speaking, it is the attorney, not the corporate client, who has the primary right to control the performance of the attorney's legal work on behalf of the client. Due to the highly skilled nature of the occupation and the attorney's position as officer of the court bound by rules of professional conduct and ethical standards, a trial attorney "is relatively free from control by the client in ordinary procedural matters" "even if this calls for overriding objections of the client." (1 Witkin, Cal. Procedure (4th ed. 1996) Attorneys, § 271, p. 336.) Because counsel retained to conduct litigation in the courts are "not subject to the control and direction of their employer over the details and manner of their performance," they are viewed as independent contractors. (*Lynn v. Superior Court* (1986) 180 Cal.App.3d 346, 349 [225 Cal.Rptr. 427]; *Worthington v. Unemployment Ins. Appeals Bd.* (1976) 64 Cal.App.3d 384, 387 [134 Cal.Rptr. 507].)

Moreover, an outside trial attorney is engaged in handling litigation as a distinct occupation, which has been said to be a highly skilled and "independent calling." (*Associated Indem. Corp. v. Ind. Acc. Com.* (1943) 56 Cal.App.2d 804, 808 [133 P.2d 698].) It is the expertise necessary to practice law which places the attorney, not the client, in the position to regulate the attorney's performance. And a corporate client cannot engage in litigation except as a party, and thus cannot be engaged in the occupation of litigation either as part of its regular business or in isolated instances. In fact, the skill and independence an attorney must exercise are the primary reasons that courts insist a corporation be represented by an attorney in litigation. (See *Merco Constr. Engineers, Inc.* v. *Municipal Court, supra*, 21 Cal.3d at pp. 730-732.)

Also indicative of the independent contractor status of an outside trial attorney is the fact that the attorney employs his or her own assistants under the attorney's exclusive control and furnishes his or her own materials. The courthouse and the attorney's office are the primary workplaces, and the attorney's education and experience are his or her primary tools.

In all of these respects, the nature of the role of an outside trial attorney is similar to that of other professionals, such as doctors and nurses, who are considered independent contractors of their clients. (*Moody v. Industrial Acc. Com.* (1928) 204 Cal. 668, 671-672 [269 P. 542, 60 A.L.R. 299].)

That an outside trial attorney is an independent contractor is reflected in decisional law. "An attorney may act as an employee for his employer in carrying out nonlegal functions . . . ; he may be the agent of his employer for business transactions . . . or for imputed knowledge . . . ; but in his role as trial counsel, he is an independent contractor." (*Merritt v. Reserve Ins. Co.* (1973) 34 Cal.App.3d 858, 881 [110 Cal.Rptr. 511], citations omitted; *Foster v. County of San Luis Obispo* (1993) 14 Cal.App.4th 668, 673 [17 Cal.Rptr.2d 730]; *Lynn v. Superior Court, supra,* 180 Cal.App.3d at p. 349; *Worthington v. Unemployment Ins. Appeals Bd., supra,* 64 Cal.App.3d at p. 387.)

Nevertheless, although outside trial attorneys are independent contractors, they also "fall within the category of agents. They are fiduciaries; they owe to the principal the basic obligations of agency: loyalty and obedience." (Rest.2d Agency (1958) § 14N, com. a, p. 80.) And, "[a]s a general proposition the attorney-client relationship, insofar as it concerns the authority of the attorney to bind his client by agreement or stipulation, is governed by the principles of agency. . . . Hence, 'the client as principal is bound by the acts of the attorney-agent within the scope of his actual authority (express or implied) or his apparent or ostensible authority; or by unauthorized acts ratified by the client.' . . . ." (*Blanton v. Womancare, Inc.* (1985) 38 Cal.3d 396, 403 [212 Cal.Rptr. 151, 696 P.2d 645, 48 A.L.R.4th 109], citations omitted.)

Hence, in a broad and general sense, an outside attorney retained to represent a corporate client at trial is both an independent contractor and an agent. (See *City of Los Angeles v. Meyers Bros. Parking System, Inc.* (1975) 54 Cal.App.3d 135, 138 [126 Cal.Rptr. 545] ["Agency and independent contractorship are not *necessarily* mutually exclusive legal categories as independent contractor and servant or employee are. In other words, an agent may also be an independent contractor." (original italics)].)

For this reason, whether an outside trial attorney is an agent of his or her corporate client within the meaning of section 317 must be determined by reference to the purpose of the statute. (See *Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 977 [90 Cal.Rptr.2d 260, 987 P.2d 727]; *Grubb & Ellis Co. v. Spengler* (1983) 143 Cal.App.3d 890, 896-897 [192 Cal.Rptr. 637].)

Section 317 is an indemnity statute, not an attorney fee statute. The Legislature did not provide therein for an award of attorney fees whenever an agent is successful in litigation with a corporate principal. Rather, indemnification is limited to actions in which a person is involved "by reason of the fact that the person is or was an agent of the corporation." (§ 317.)

In an agency relationship, the agent's acts are regarded as the acts of the principal. (Civ. Code, §§ 2330, 2338.) An agent of a corporation may become liable, or may be alleged to be liable, to the corporation or to third parties, for conduct which was in fact performed as the acts of the corporation. (Civ. Code, § 2343; see 2 Witkin, Summary of Cal. Law (9th ed. 1987) Agency and Employment, §§ 57-61, pp. 64-68.)

Therefore, section 317 was enacted to encourage capable individuals to act for and in the place of the corporation by affording them indemnification for the expenses of defending against lawsuits to which they are made parties because they are agents of the corporation. (*APSB Bancorp v. Thornton Grant, supra*, 26 Cal.App.4th at p. 931; see *People v. Treadwell, supra*, 69 Cal. at p. 236.) As explained in a legislative committee comment: "The practical effect of [prior restrictions on the indemnification of corporate directors, officers, or employees for the reasonable expenses of defending against a lawsuit was] to force an official or employee of the corporation who is being sued as such to enter into some settlement of the action regardless of how confident he and the corporation may be that the action is without merit. In the case of a derivative action, this [was] particularly true due to the large fees and expenses which may be incurred by [the corporation's agent] in defense of the action since indemnification [was] only available at the conclusion of the action. . . . [¶] . . . [¶] The purpose of the indemnification provisions in the new law is to provide sufficient flexibility to afford reasonable protection for directors and officers while imposing safeguards which adequately protect the shareholders in the granting of indemnification. In general, [section 317] provides that a corporation may advance 'expenses' incurred by a corporate 'agent' in defending any 'proceeding' prior to the final disposition of such proceeding upon the receipt of an undertaking that the agent will reimburse the corporation unless it is ultimately determined that the agent is entitled to indemnification. . . . [¶] . . . [¶] If a corporate agent has been successful on the merits . . . , [section 317] expressly provides that he shall be indemnified against expenses actually and reasonably incurred by him." (Leg. Com. com., reprinted at 23E West's Ann. Corp. Code (1990 ed.) foll. § 317, pp. 209-210.)

Thus, section 317 is intended not only to afford reasonable protection to corporate agents, but also to impose safeguards to protect shareholders by restricting indemnity to situations in which liability is sought to be imposed upon an individual by reason of the fact the person was an agent of a corporation, i.e., based upon acts or omissions in which, under general principles of agency law, the person was charged with acting for and in the place of the corporation.

As demonstrated by the facts of this case, neither of these purposes is advanced by applying section 317 to an outside attorney retained by a

corporation to represent it at trial, who then is sued by the corporation on the ground that the attorney committed legal malpractice while representing the corporation.

Channel alleged Porter Simon failed to perform competently certain legal services (1) over which Porter Simon had the primary right of control, (2) which required the skills of a distinct occupation, and (3) for which Porter Simon supplied the "tools" and "workplace" of its office. (*APSB Bancorp v. Thornton Grant, supra*, 26 Cal.App.4th at pp. 932-933.)

In other words, Channel sued Porter Simon for its actions in the capacity of an independent contractor of the corporation, not for acts which, under principles of agency, are deemed to be those of the corporation. Hence, applying section 317 to an outside attorney retained to represent a corporation at trial does not promote the purpose of the statute to encourage capable individuals to *act for and in the place of* the corporation. In fact, because an outside trial attorney has the benefit of the litigation privilege (Civ. Code, § 47), the indemnification provisions of section 317 are not even needed to encourage attorneys to agree to represent corporations at trial.

Nor is there any other benefit to the shareholders that can be derived by compelling the corporation to indemnify outside trial counsel whom the corporation ends up suing unsuccessfully for professional malpractice. Indeed, applying section 317 to such an attorney flies in the face of the statute's purpose *to protect shareholders from unreasonable demands for* indemnification.

For all the reasons stated above, we conclude that an outside attorney retained by a corporation to represent it at trial, who then is sued by the corporation for alleged legal malpractice while representing the corporation, is not a party to the malpractice suit "by reason of the fact [the attorney] is or was an agent of the corporation," within the meaning and purposes of section 317.

Hence, the trial court's ruling that Porter Simon was entitled to the indemnification required by section 317 must be reversed.[1]

[1] Our dissenting colleague believes that because " 'the law of principal and agent is generally applicable to the relation of attorney and client,' " our "analysis should begin and end there," i.e., since outside counsel retained by a corporation has *some* attributes of an agent, said counsel necessarily is an agent of the corporation within the plain meaning of section 317 (dis. opn., *post*, at p. 1234). This oversimplified approach ignores the fact outside

## DISPOSITION

The order awarding Porter Simon attorney fees and expenses in the amount of $83,860 is reversed. Channel shall recover its costs on appeal. (Cal. Rules of Court, rule 26(a).)

Kolkey, J., concurred.

**NICHOLSON, J.**—I respectfully dissent.

In my view, the trial court properly applied the plain language of Corporations Code section 317 (section 317).

When interpreting a statute, we must first look to the words of the statute to ascertain the Legislature's intent. If the words are clear, we must give effect to their plain meaning. (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].) " 'When statutory language is . . . clear and unambiguous there is no need for construction, and *courts should not indulge in it.*' " (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 800 [268 Cal.Rptr. 753, 789 P.2d 934], italics in *Delaney*.)

Subdivision (d) of section 317 states, in pertinent part: "To the extent that an agent of a corporation has been successful on the merits in defense of any proceeding referred to in subdivision . . . (c) . . . , the agent shall be indemnified against expenses actually and reasonably incurred by the agent in connection therewith." Subdivision (c) provides: "A corporation shall

---

counsel retained to represent a corporation at trial acts predominately in the capacity of an independent contractor of the corporation.

It is the dual attributes of outside counsel as both an independent contractor and agent of the corporation that make it ambiguous whether outside counsel sued by the corporation for legal malpractice is a party to the lawsuit "by reason of the fact that the person is or was an agent of the corporation," as required by the statute. Because section 317 nowhere indicates whether the agency or independent contractor attributes should control in determining if outside counsel falls within the language of the statute, we necessarily must turn to the statute's purpose.

The dissent also protests that "the legislative history does not deal with the question raised" and, thus, "resort to such an interpretive aid amounts to nothing more than unaided legislative mind-reading" (dis. opn., *post*, at p. 1236). To the contrary, as we pointed out, the legislative purpose of section 317 is readily apparent and must be considered in determining whether the phrase "agent of the corporation" includes outside counsel who represent corporations by virtue of the skills that make them independent contractors.

As we have explained, the dissent's interpretation of section 317 to require corporate indemnification of outside counsel hired as an independent contractor, whom the corporation then sues for legal malpractice, would defeat the statute's purpose to protect corporate shareholders and would not further its purpose of affording reasonable protection for corporate agents who are sued for their corporate acts. Simply stated, there is nothing in the plain language of the statute that requires such an absurd and counterproductive result.

have power to indemnify any person who was or is a party . . . by or in the right of the corporation to procure a judgment in its favor by reason of the fact that the person is or was an agent of the corporation, against expenses actually and reasonably incurred by that person in connection with the defense . . . ."

Porter Simon prevailed against Channel Lumber Company, Inc. (Channel) in Channel's suit which alleged that Porter Simon committed malpractice in defending Channel in another action (the Pate litigation). (See *Pate v. Channel Lumber Co.* (1997) 51 Cal.App.4th 1447 [59 Cal.Rptr.2d 919].) The question, as framed by the majority for the purpose of applying section 317, is whether Porter Simon was Channel's agent in the Pate litigation. (maj. opn., *ante*, at p. 1227.)

"For the purposes of [section 317], 'agent' means any person who is or was a director, officer, employee or *other agent* of the corporation . . . ." (§ 317, subd. (a), italics added.) "An agent is one who represents another, called the principal, in dealings with third persons." (Civ. Code, § 2295; see *APSB Bancorp v. Thornton Grant* (1994) 26 Cal.App.4th 926, 931 [31 Cal.Rptr.2d 736] [applying the definition of "agent" in Civ. Code § 2295 to the term "agent" in Corp. Code § 317].) "It is . . . well recognized by the authorities that the law of principal and agent is generally applicable to the relation of attorney and client [citation] . . . ." (*Sullivan v. Dunne* (1926) 198 Cal. 183, 192 [244 P. 343]; see also 1 Witkin, Cal. Procedure (4th ed. 1996) Attorneys, § 69, pp. 102-103.)

Since Porter Simon represented Channel in the Pate litigation and one who represents a principal in dealings with third persons is the principal's agent, Porter Simon was Channel's agent in the Pate litigation and was properly awarded its expenses after it prevailed in the subsequent malpractice action.

In representing Channel in the Pate litigation, Porter Simon acted only in the interest of Channel. From the record, it appears Porter Simon acted in good faith. Indeed, the only bad faith on this record is on the part of Channel, which the trial court found had intentionally withheld documents from the plaintiffs in the Pate litigation. Channel sued Porter Simon for actions taken while Porter Simon acted as an agent of the corporation. Porter Simon prevailed on summary judgment with its defense that Channel had unclean hands. Accordingly, Porter Simon was "successful on the merits in defense of" the malpractice proceeding, and is entitled to indemnification. Nothing in section 317 authorizes an alternative interpretation.

The analysis should begin and end there. However, the majority skips this analysis and substitutes its own nontextual reasoning that ignores the plain language of the statute.

After recognizing that general principles of agency law must be applied to determine whether Porter Simon was Channel's agent under section 317, the majority undertakes a four-step process to reach its conclusion. First, the majority states that an agent is one who does on behalf of the principal what the principal *can* do for itself and, therefore, an outside attorney cannot be the corporation's agent because the corporation cannot represent itself in court. (Maj. opn., *ante*, at pp. 1235-1236.) Second, the majority concludes that an outside attorney retained to represent a client is both the agent and the independent contractor of the principal. (Maj. opn., *ante*, at pp. 1228-1230.) Third, the majority continues: "For this reason, whether an outside trial attorney is an agent of his or her corporate client within the meaning of section 317 must be determined by reference to the purpose of the statute." (Maj. opn., *ante*, at p. 1230.) And fourth, the majority concludes section 317 does not apply here because applying it to an outside attorney does not serve the ostensible purpose of section 317 to afford reasonable protection to individuals who act for and in the place of the corporation. (Maj. opn., *ante*, at pp. 1230-1232.)

I disagree with this analysis both because the legal conclusions are incorrect and because the logical progression of the argument is flawed.

The majority's first step in the logical progression is its argument that an outside attorney retained by a corporation is not an agent because the corporation itself cannot represent itself in court. (Maj. opn., *ante*, at p. 1228.) There is no authority stating an outside attorney retained to represent a corporation in court is not the corporation's agent. The law is contrary. The majority arrives at its conclusion by citing to authority such as Civil Code section 2304, which provides that " '[a]n agent may be authorized to do any acts which his principal might do, except those to which the latter is bound to give his personal attention.' " (Maj. opn., *ante*, at p. 1228, quoting Civ. Code, § 2304.) This section does not purport to define "agent" or to identify the parameters of agency relationships; instead, it merely limits delegation of acts from the principal to the agent. As noted above, Civil Code section 2295 defines "agent": "An agent is one who represents another, called the principal, in dealings with third persons."

A corporation is a legal fiction. It can do nothing, except through its agents. (See *Shoemaker v. Myers* (1990) 52 Cal.3d 1, 24-25 [276 Cal.Rptr. 303, 801 P.2d 1054, 20 A.L.R.5th 1016].) To say that the agent cannot do, on the principal's behalf, what the principal cannot do for itself is to say that a corporation cannot have agents because it cannot act and cannot act because it cannot have agents. That, of course, is not the law. Section 317 and a myriad of other statutes recognize that corporations have agents.

Accordingly, the majority's assertion that an outside attorney is not an agent of the corporation because the corporation cannot represent itself in court falls apart.

The majority's analysis of whether an outside attorney is an independent contractor, the second step in the progression of the argument, is superfluous. As the majority concludes, "an outside attorney retained to represent a corporate client at trial is both an independent contractor and an agent." (Maj. opn., *ante*, at p. 1230; see *City of Los Angeles v. Meyers Bros. Parking System, Inc.* (1975) 54 Cal.App.3d 135, 138 [126 Cal.Rptr. 545].) The attempt to determine whether an attorney is an independent contractor or an agent creates a false dichotomy—a false dilemma. Whether an attorney is the client's independent contractor is altogether a different question than whether the attorney is the client's agent. (See *APSB Bancorp v. Thornton Grant, supra,* 26 Cal.App.4th at p. 930.) The former question is immaterial to this case because determining whether Porter Simon was Channel's independent contractor does not lead to a conclusion concerning whether Porter Simon was Channel's agent. Accordingly, the majority's discussion of this false dichotomy lends nothing to the eventual conclusion the majority reaches.

The majority's third step is a leap in logic over the plain meaning rule of statutory interpretation. Its opinion states it is necessary to resort to nontextual statutory construction (construing § 317 in a manner consistent with its ostensible purpose) because an outside attorney retained to represent a corporation in court is both an independent contractor and an agent. (Maj. opn., *ante*, at pp. 1230-1231.) The conclusion does not follow from the premise. That an outside attorney who represents a corporation is both an independent contractor and an agent does not create an ambiguity in the term "agent." Since there is no ambiguity in the statute, there is no reason to resort to nontextual statutory construction. (*Delaney v. Superior Court, supra,* 50 Cal.3d at p. 800.) Accordingly, the majority's foray into the nebulous domain of legislative history in search of section 317's meaning is unjustifiable.

Beyond that, the legislative committee comment quoted by the majority is unhelpful. It makes no reference to whether the statute applies to outside attorneys and makes no attempt to limit the type of agency relationships subject to section 317. (See maj. opn., *ante*, at p. 1231.) When, as here, the legislative history does not deal with the question raised, resort to such an interpretive aid amounts to nothing more than unaided legislative mind-reading. Our powers do not extend that far. If the Legislature intended to limit the types of agency relationships to which section 317 applies, it would

have done so, rather than extending the benefits to all agents—which it did by using the term "other agent" in the statute.

As a matter of statutory interpretation, the majority's conclusion is indefensible. The plain language of the statute, including use of the term "other agent" in subdivision (a) of section 317, requires indemnification to outside attorneys under the circumstances present in this case. Therefore, I would affirm.